**\*NOT FOR PUBLICATION\***

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| FMHUB, LLC d/b/a MuniHub, | Civil Action No. 19-15595 (FLW) (DEA) |
| Plaintiff, | **OPINION** |
| v. | |
| MUNIPLATFORM, LLC, KEVIN TOUHEY, and JILL MERGEL, | |
| Defendants. | |

**WOLFSON, Chief Judge:**

Plaintiff FMHUB, LLC d/b/a MuniHub ("Plaintiff") has filed a Complaint against defendants Kevin Touhey ("Touhey"), [1] Jill Mergel ("Mergel"), and Muniplatform, LLC ("Muniplatform"), asserting claims pursuant to the Computer Fraud and Abuse Act ("CFAA"), 8 U.S.C. §1030, and the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201(a)(1)(A), and various state law claims. The Complaint alleges that Touhey and Mergel's creation of Muniplatform, a business providing analytic reporting and digital marketing products for municipalities and investors, involved the wrongful sharing, provision, dissemination, and duplication of Plaintiff's confidential and proprietary intellectual property. Presently before the Court is Touhey's motion to dismiss Plaintiff's CFAA and DMCA claims against him. For the reasons set forth below, Touhey's motion is **GRANTED**; Plaintiff's claims against Touhey pursuant to the CFAA and DMCA are dismissed without prejudice.

---

[1]   Defendant Touhey is proceeding *pro se* in this matter.

## I.    FACTS & PROCEDURAL HISTORY

For the purposes of this motion, the Court assumes as true the relevant facts derived from Plaintiff's Complaint and the documents attached thereto.

Plaintiff, through its web platform MuniHub, provides financial deal marketing solutions for the municipal bond market, including providing transaction level data with access to the prospectus and other offering documents, via a unique web-based link that can be disseminated to all deal participants.  Compl. ¶ 12.  Plaintiff's Municard trademark[2] facilitates the posting and distribution of transaction-based information, including offering documents and streamlines the delivery of transaction-based information by consolidating the data in a single "Card."  *Id*. ¶ 13. Plaintiff has developed and operated its business of providing deal analytic reports for approximately seven years.  *Id.* at ¶¶ 15–16.  During this time, it has cultivated a vast network of long-standing municipal marketplace clients, by developing and maintaining extensive client information and providing its clients with tailored and competitive services.  *Id.* at ¶¶ 16–19.

As Plaintiff has devoted substantial time and resources to develop its network of clients and copyrighted works, it alleges that its "confidential client records, business model, deal procedures, marketing and distribution methods, pricing information and web-design and layout" constitute confidential information and valuable trade secrets ("Confidential Information").  *Id.* ¶ 20.  Accordingly, Plaintiff requires its employees to keep the Company's Confidential Information in strict confidence and restricts access to this information.  In that regard, Plaintiff maintains a security policy, which includes protecting its Confidential Information through computer passwords, limiting employees/contracted consultants from accessing the information, restricting

---

[2]    Plaintiff owns a federal trademark registration for the mark MUNICARD, pursuant to 15 U.S.C. § 1065.  Compl. ¶ 14.

access to the Confidential Information from non-employees, and forbidding employees and contracted consultants from copying, transferring or otherwise duplicating any of Plaintiff's confidential information. *Id.* ¶ 21.

In November 2017, Mergel, who at the time was a contract consultant and Transaction Services Analyst for Plaintiff, referred Touhey to Plaintiff; Touhey was subsequently hired as a contract consultant for Plaintiff.  Prior to that date, Touhey had never sold municipal bonds nor had any experience in the municipal bond market.  Nevertheless, on November 12, 2017, Plaintiff and Touhey executed a consulting agreement ("Consulting Agreement"), dated November 15, 2017.  *Id.* at ¶¶ 24, 32, 37–40; *see also id.*, Ex. B.  The Consulting Agreement outlined Touhey's duties as "Senior Consultant-Business Development" and "Chief Sales Officer."  *Id.* at ¶¶ 24, 26.  Further, the Consulting Agreement included clauses governing the ownership of intellectual property, confidentiality, as well as a non-compete clause.  *Id.* at ¶¶ 37–40.  It also stated that Touhey covenanted and warranted that he would perform the Consulting Agreement "in accordance with its terms without violating the rights of others or any applicable law and that he has not and shall not become a party to any agreement of any kind which conflicts with" the Consulting Agreement.  *Id.* at ¶ 40.  As a consultant for Plaintiff, Touhey was responsible for, *inter alia*, developing new business for Plaintiff, managing existing clients, tracking business activity on Salesforce, and coordinating deals with the Munihub "Transaction Services" group. *Id.* ¶ 26.  Through his position, Plaintiff alleges Touhey "had intimate knowledge of Plaintiff's pricing and client-related information," and "had access to and used confidential and proprietary information of Plaintiff relating to its business, operations, business strategy, clients and prospective clients. *Id.* ¶¶ 27, 29.

On or about October 18, 2018, while Touhey was still performing his duties as Consultant/Chief Sales Officer, he allegedly purchased the domain name "MuniPlatform.com" and began to replicate Munihub's business model and solutions.  *Id.* at ¶ 43.  Around the same time, Touhey allegedly began initiating contact with Plaintiff's clients, who were unknown to him prior to commencement of the Consulting Agreement, and represented to them that, in early 2018, he would be able to present them with a lower priced option than that provided by Plaintiff.  *Id.* ¶ 44. On November 8, 2018, Plaintiff's President emailed Touhey and requested a response by November 16, 2018, regarding the status of Touhey's consulting responsibilities, which Touhey had apparently not been fulfilling.  *Id.* ¶ 45.  Thereafter, on November 16, 2018, Touhey resigned. Plaintiff fully compensated Touhey through December 31, 2018, per the terms of the Consulting Agreement.  *Id.* at 45.

On December 4, 2018, Touhey filed Articles of Organization in South Carolina for a limited liability company, MuniPlatform, LLC.  *Id.* at ¶ 46.  Plaintiff alleges that in early 2019, Mergel forwarded to her personal email account certain of Plaintiff's Confidential Information and shared that information with Touhey.  Plaintiff further alleges that Touhey and Mergel "wrongfully possessed and misappropriated Plaintiff's Confidential Information, including but not limited to, . . . Munihub presentations, pricing, deal emails, and mailers, and spreadsheets containing Plaintiff's entire distribution network.  *Id.* ¶ 47.

On April 3, 2019, Plaintiff, through its counsel, sent Touhey a cease and desist letter as to his operation of MuniPlatform, but received no response.  *Id.* at ¶ 55.  Plaintiff then filed the instant Complaint on July 19, 2019.  In the Complaint, Plaintiff seeks monetary, injunctive and other relief against Touhey for: (i) breach of contract; (ii) violation of the New Jersey Trade Secrets Act, N.J. Stat. § 56:15-1, *et seq*¨; (iii) unfair competition in violation of N.J. Stat. § 54: 4-1; (iv) tortious

interference with contract; (v) tortious interference with prospective economic or contractual relationship; (vi) conversion; (vii) unjust enrichment; (viii) violation of the CFAA, 18 U.S.C. §1030; (ix) violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*; and (x) violation of the DMCA, 17 U.S.C. § 1201(a)(1)(A).   On October 28, 2019, Touhey filed an Answer to the Complaint.   That same day, Touhey also filed a motion to dismiss for lack of standing, which this Court denied on May 4, 2020.   *See* ECF Nos. 16, 48.   On March 30, 2020, Touhey filed the instant motion under Rule 12(b)(6) to dismiss Plaintiff's claims under the CFAA and the DMCA.

## II.   WHETHER TOUHEY'S MOTION IS PROPERLY FILED

Before addressing the merits of Touhey's motion, I address whether it is improperly filed. Plaintiff argues that the Court should deny Touhey's motion because it is both untimely and filed in violation of the Pretrial Scheduling Order.

Plaintiff maintains that Touhey filed the instant motion in violation of the Pretrial Scheduling Order, which provides that "[a]ny party intending to file a dispositive motion must first seek leave of the Court by way of a letter application."   *See* ECF No. 30, at ¶ 10.   Touhey maintains that he attempted to comply with the Order and sent a letter to Judge Arpert on February 27, 2020 after attempting to confer with Plaintiff.   *See* Pl.'s Opp., Ex. B.   It appears, however, that Judge Arpert never granted such leave to file and, accordingly, Touhey filed his motion after a month had passed and he received no response.   Considering Touhey's *pro se* status and his attempt to comply with the Scheduling Order, I will excuse Touhey's non-adherence to Judge Arpert's Order,[3] particularly since the motion has merit.   *See infra.*

Nevertheless, the Court acknowledges that, to the extent Touhey's motion to dismiss is filed pursuant to Rule 12(b)(6), it is improper because he has already filed an answer.   *See Vasquez*

---

[3]   However, Touhey is well advised that he must adhere to orders of the Court.

*v. Spain Inn, Inc.*, No. 19-452, 2019 WL 5258197, at *1–2 (D.N.J. Oct. 17, 2019) (finding Rule 12(b)(6) motion was improperly filed where defendants answered the complaint before filing the motion). However, in light of Touhey's *pro se* status, the Court will, in its discretion, construe his motion as a motion for judgment on the pleadings pursuant to Rule 12(c). *See Rivera v. City of Camden Bd. of Educ.*, 634 F. Supp. 2d 486, 488 (D.N.J. 2009) (construing motion to dismiss filed after the filing of defendant's answer as a motion for judgment on the pleadings); *Wyeth v. Ranbaxy Labs. Ltd.*, 448 F. Supp. 2d 607, 609 (D.N.J. 2006) ("A motion made before an answer is filed is a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). A motion made after an answer is filed is a motion for judgment on the pleadings pursuant to Rule 12(c).").

## III.     STANDARD OF REVIEW

Rule 12(c) of the Federal Rules of Civil Procedure allows a party to move for judgment on the pleadings "after the pleadings are closed but within such time as not to delay trial." Fed. R. Civ. P. 12(c). "'A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12 (b)(6) motion.'" *Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017) (quoting *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010)); *see also Hoffman v. Nordic Naturals, Inc.*, 837 F.3d 272, 279 n.47 (3d Cir. 2016); *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991); *see also Spruill v. Gillis*, 372 F.3d 218, 223 n.2 (3d Cir. 2004) ("There is no material difference in the applicable legal standards").

In reviewing a motion to dismiss for failure to state a claim upon which relief may be granted, under Federal Rule of Civil Procedure 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v.*

*UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks omitted). Although Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original); *see also Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (stating that standard of review for motion to dismiss does not require courts to accept as true "unsupported conclusions and unwarranted inferences" or "legal conclusion[s] couched as factual allegation[s].") (internal quotation marks omitted).   "Thus, to survive a Rule 12(b)(6) motion to dismiss or a Rule 12(c) motion asserting that Plaintiff has failed to plead a claim, a complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim is 'plausible on its face.'" *Crawford v. Wheeler*, No. 18-1735, 2019 WL 3759696, *2 (D.N.J. Aug. 9, 2019) (quoting *Twombly*, 550 U.S. at 570).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   While the "plausibility standard is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that defendant had acted unlawfully." Id.   When reviewing a motion made pursuant to Rule 12(c), a court must take all allegations in the relevant pleading as true, viewed in the light most favorable to the non-moving party. *Gomez v. Toledo*, 446 U.S. 635, 636 (1980); *Mele v. FRB*, 359 F.3d 251, 253 (3d Cir. 2004).   All reasonable inferences must be made in the non-moving party's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010).   "The motion should not be granted 'unless the moving party has established that there is no material issue of fact to resolve, and that it is entitled to judgment in its favor as a matter of law.'" *Mele*,

359 F.3d at 253 (quoting *Leamer v. Fauver*, 288 F.3d 532, 535 (3d Cir. 2002)).  Accordingly, in order to survive a motion for judgment on the pleadings, the non-moving party's pleading must provide "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  This standard, like a motion to dismiss, requires the non-moving party to show "more than a sheer possibility that a defendant has acted unlawfully," but does not create as high of a standard as to be a "probability requirement."  *Ashcroft*, 556 U.S. at 678.

## IV.   DISCUSSION

### A.  CFAA Claim

Touhey moves to dismiss Plaintiff's CFAA claim, arguing that Plaintiff does not plead sufficient facts to plausibly allege that Touhey accessed the computer data at issue "without authorization" or by "exceeding authorized access," because Plaintiff engages in "group pleading" that does not delineate the wrongdoing committed by Touhey as opposed to alleged wrongdoing committed by Mergel.  *Id.* at 7–13.  Next, Touhey argues Plaintiff has not alleged a cognizable "loss," as required to state a CFAA claim.  *Id.* at 8-9; Def. Reply Br. 5-7.  Plaintiff, however, maintains that its Complaint "giv[es] Touhey fair notice of what the claim is, the grounds upon which it rests" and suggests that Federal Rule of Civil Procedure 8(a)(2) "do[es] not require detailed factual allegations."

"Although initially intended as a criminal statute that penalized computer hacking activities, the CFAA explicitly authorizes civil actions under certain circumstances."  *PNC Mortg. v. Superior Mortg. Corp.*, No. 09-5084, 2012 WL 627995, at *3 (E.D. Pa. Feb. 27, 2012).  Specifically, relevant here, a plaintiff may have a civil cause of action against a defendant who "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer."  18 U.S.C. § 1030(a)(2)(C).  "To maintain

a civil action for a CFAA violation, a plaintiff must allege conduct involving one of five enumerated factors." *Chubb INA Holdings Inc., v. Chang*, No. 16-2354, 2017 WL 499682, at *6 (D.N.J. Feb. 7, 2017) (citing 18 U.S.C. § 1030(g).  From the Complaint, it appears that Plaintiff alleges a violation of the first enumerated factor: that Touhey's alleged unauthorized access to Plaintiff's computer caused "a loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value."  18 U.S.C. § 1030(c)(4)(A)(i)(I).

Here, the Court must determine whether Plaintiff has sufficiently alleged that Touhey accessed a computer without authorization or in excess of his authorized access.  There is some dispute over the meaning of these terms and, consequently, a circuit split has emerged as to the type of conduct required to state a civil claim under the CFAA.  For example, the Seventh Circuit has held that an employee exceeds his authorized access when he accesses files after breaching the duty of loyalty to his employer.  *Int'l Airport Ctrs., LLC v. Citrin*, 440 F.3d 418, 420–21 (7th Cir. 2006).  Similarly, the First, Fifth and Eleventh Circuits have held that the boundaries of "authorized access may include exceeding the purposes for which access is 'authorized.'"  *United States v. John*, 597 F.3d 263, 272 (5th Cir. 2010); *United States v. Rodriguez*, 628 F.3d 1258, 1263 (11th Cir. 2010); *EF Cultural Travel BV v. Explorica, Inc.*, 274 F.3d 577, 581-84 (1st Cir. 2001).  Conversely, the Second, Fourth and Ninth Circuits have held that an employee entitled to obtain the documents at issue does not exceed authorized access, even where he accesses the information for an improper purpose.  *United States v. Valle*, 807 F.3d 508, 527-28 (2d Cir. 2015); *WEC Carolina Energy Solutions LLC v. Miller*, 687 F.3d 199, 204 (4th Cir. 2012) (neither term reaches "the improper use of information validly accessed"); *LVRC Holdings, LLC v. Brekka*, 581 F.3d 1127, 1135 n.7 (9th Cir. 2009).

While the Third Circuit has not addressed this issue, "[d]istrict courts in this circuit 'have held, in the employer-employee context, that an employee who may access a computer by the terms of his employment is authorized to use that computer for the purposes of [the CFAA] even if his purpose in doing so is to misuse or misappropriate the employer's information." *Robinson v. New Jersey*, No. 11-6139, 2013 WL 3894129, at *4 (D.N.J. July 26, 2013) (alteration in original) (quoting *Integrated Waste Solutions, Inc. v. Goverdhanam*, No. 10-2155, 2010 WL 4910176, at *8 (E.D. Pa. Nov. 30, 2010)); *see also Christie v. Nat'l Institute for Newman Studies*, No. 16-6572, 2019 WL 1916204, at *5 (D.N.J. Apr. 30, 2019) ("Importantly, an employee who accesses a computer by the terms of his or her employment is 'authorized' to use that computer for the purposes of the CFAA even if the purpose in doing so is to misuse or misappropriate the information."). In other words, "[w]hile disloyal employee conduct might have a remedy in state law, the reach of the CFAA does not extend to instances where the employee was authorized to access the information he later utilized to the possible detriment of his former employer." *Givaudan Fragrances Corp. v. Krivda*, No. 08-4409, 2013 WL 5411475, at *2 (D.N.J. Sept. 26, 2013) (quoting *Synthes, Inc. v. Emerge Med., Inc.*, No. 08-4409, 2012 WL 4205476, at *16 (E.D. Pa. Sept. 19, 2012)).[4]

---

[4]     I rendered the decision in *Christie*, in which I followed the approach taken by the Second, Fourth, and Ninth Circuits and concluded that an employee who is authorized to access the computer in question by the terms of his or her employment "is 'authorized' to use that computer for purposes of the CFAA even if the purpose in doing so is to misuse or misappropriate the information." 2019 WL 1916204, at *5. District courts in this circuit have almost universally adopted this approach. *See Exeter Twp. v. Gardecki*, No. 18-1723, 2019 WL 3024740, at *4 n.4 (E.D. Pa. July 10, 2019) ("While there is a circuit split, district courts in this circuit have almost entirely adopted a narrow interpretation of 'authorization' and held that an employee is not liable under the CFAA unless he 'hacks into' a computer or the files that he is not authorized to access."). Nothing in the parties' briefing suggests that I should follow an approach that differs from that set forth in *Christie*.

In support of its CFAA claim against Touhey, Plaintiff alleges that "Defendants, knowingly and with intent to defraud, wrongfully accessed, trespassed, engineered and/or hacked Plaintiff's software, hardware and systems to obtain and misappropriate Plaintiff's Confidential Information and property."  Compl. ¶ 117.  What Plaintiff does not make clear, however, is precisely how Touhey either exceeded his authorized access to Plaintiff's computers, or otherwise accessed Plaintiff's computers without authorization.  Tellingly, Plaintiff does not provide any details as to the basis of its CFAA claim in its briefing, and simply states that "[t]here can be no doubt that Touhey is cognizant of precisely the nature of Plaintiff's CFAA claims."  Pl.'s Br., at 11.  That, however, is not the relevant question on a motion pursuant to Rule 12(c).  Instead, the Court must determine whether the Complaint contains enough factual matter to plausibly support a claim for relief.

In that regard, while Plaintiff's Complaint sets forth specific factual allegations concerning Touhey's conduct in creating Muniplatform, it fails to provide any factual allegations that would indicate Touhey either accessed Plaintiff's computers without authorization or in excess of his authorized access.  Indeed, making all inferences in Plaintiff's favor, it appears that Plaintiff's CFAA claim against Touhey may be based on either (1) his access to Plaintiff's Confidential Information while he was still employed as a consultant, but had begun operating Muniplatform, or (2) his receipt of Confidential Information that Mergel sent from her own personal email.  *See* Compl. ¶¶ 43–44, 47.  Neither of these theories, however, states a plausible claim for relief under the CFAA.  The first theory fails because Touhey had authorization to access Plaintiff's computer as a contract employee of the company.  *See* Compl. ¶¶ 27, 29 (alleging that, as a consultant, Touhey "had access to and used confidential and proprietary information of Plaintiff relating to its business, operations, business strategy, clients and prospective clients").  As such, even if Touhey

intended to misuse information taken from Plaintiff's computer, he cannot be liable under the CFAA. *See Christie*, 2019 WL 1916204, at *5 (noting that "what one intends to do with the information taken from a computer is irrelevant if the individual was given computer access to that information").[5]  Indeed, Plaintiff does not allege that it somehow revoked Touhey's authorization at any time before his contract expired in December 31, 2018.  Moreover, the second theory fails because, even assuming that Mergel violated the CFAA by misappropriating Plaintiff Confidential Information,[6] there is no allegation that Touhey somehow exceeded his authorized access to Plaintiff's computers in receiving that information from Mergel's personal email.  Therefore, because the Complaint fails to allege how Touhey exceeded his authorized access to Plaintiff's computers or otherwise accessed Plaintiff's computers without authorization, Plaintiff's CFAA claim against Touhey is dismissed.[7]

### B.  DMCA Claim

Touhey next contends that the Complaint does not state a claim against him under the DMCA because (1) Plaintiff fails to allege the existence of any copyrighted work that was accessed and (2) Plaintiff fails to allege that Touhey circumvented any measures intended to control access to any such work.  Def. Br. Supp. Mot. 14–16; Reply Supp. Def.'s Mot. Dismiss 8–9.  Plaintiff

---

[5]     While an employee may be liable under the CFAA where the employee accesses a computer without authorization, *i.e.*, where the employee had "no rights, limited or otherwise, to access the computer in question," *Christie*, 2019 WL 1916204, at *5, the Complaint is devoid of any allegations that would suggest Touhey accessed information on Plaintiff's computers that he was not authorized to access.

[6]     The Court, however, notes that it makes no finding as to the viability of Plaintiff's CFAA against Mergel.

[7]     Because the Court finds that the Complaint fails to allege that Touhey accessed Plaintiff's computers without authorization, it need not determine whether the Complaint sufficiently alleges that Plaintiff suffered a loss of more than $5000.

contends that based on the facts alleged in its Complaint, it has plausibly stated a claim against Touhey for violation of the DMCA.  Pl. Resp. Opp. Def. Mot. Dismiss 11-13.

The DMCA was "[e]nacted to address the problem of online copyright infringement" and, essentially, "makes it a violation of copyright law for a person to engage in activity commonly referred to as hacking when the object of that activity is to access copyrighted material that is protected by technological measures."  *In re Maxim Integrated Prods., Inc.*, No. 12-244, 2013 WL 12141373, at *16 (W.D. Pa. Mar. 19, 2013).  Plaintiff alleges that Touhey's actions constitute direct circumvention of a technological measure that effectively controls access to a copyrighted work in violation of 17 U.S.C. § 1201(a)(1)(A).  Compl. ¶ 138.  Under the DMCA's "anti-circumvention" provision, "[n]o person shall circumvent a technological measure that effectively controls access to a work protected under" the DMCA.  17 U.S.C. § 1201(a)(1).  To state a claim under this section, a plaintiff must allege (1) that the work was protected under the Copyright Act; (2) that the copyrighted work was protected by "a technological measure that effectively controls access"; and, (3) that the measure was "circumvented" in order to obtain access.  Id. § 1201(a)(1)(A).

A plaintiff must meet an "initial burden [of] plead[ing] factual allegations that the information allegedly obtained was protected by copyright."  *See In re Maxim Integrated Prods., Inc.*, 2013 WL 12141373, at *16; *see also Granter v. Dethlefs*, No. 10-6941, 2014 WL 2475979, at *7 (E.D. Pa. June 2, 2014) (dismissing DMCA claim where the complaint did not contain sufficient facts "to show copyright ownership").  Plaintiff has not met that burden here.  In the Complaint, there are only two mentions of "copyrighted works"; first, Plaintiff alleges that it "has devoted substantial money, time and resources to develop its . . . copyrighted works," Compl. ¶ 20; and second, Plaintiff claims that "Defendants' actions constitute direct circumvention of a

technological measure that effectively controls access to a copyrighted work." Compl. ¶ 138.  What is missing from these allegations, however, is an identification of, and direct statement that there are, any "copyrighted works."  Without such allegations, the Court cannot determine whether the information in question is eligible for protection under the Copyright Act or, further, whether Plaintiff even holds such a copyright.  Accordingly, the Court grants Touhey's Motion on Plaintiff's DMCA claim.[8]

### C.  Supplemental Jurisdiction

Finally, because the Court dismisses both the federal claims against Touhey, it must determine whether to exercise supplemental jurisdiction over the remaining state law claims against him.  "Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  *Wis. Dept. of Corrs. v. Schacht*, 524 U.S. 381, 387 (1998) (citation and internal quotation marks omitted).  Where a district court has original jurisdiction pursuant to 28 U.S.C. § 1331 over federal claims and supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367(a), the district court has discretion to decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original

---

[8]      In its Opposition Brief, Plaintiff additionally argues that it has a claim against Touhey under 17 U.S.C. § 1702, which prohibits anyone "without the authority of the copyright owner or the law" to engage in the removal, alteration, use or distribution of 'copyright management information."  Pl.'s Opp. Br., at 12–13.  That theory of liability, however, is not set forth in the Complaint.  Indeed, the factual support offered in support of this theory is through discovery Plaintiff has obtained through a third-party subpoena.  As it is axiomatic that a plaintiff may not amend its complaint in response to the motion to dismiss or judgment on the pleadings, *see Pennsylvania ex rel. Zimmerman v. Pepsico*, 836 F.3d 173, 181 (3d Cir. 1988), the Court declines to address this argument.  The Court does, however, note that this theory of liability suffers from the same defect as Plaintiff's §1201(a)(1)(A) claim, in that, Plaintiff has not alleged the existence of a copyright.  Nevertheless, to the extent Plaintiff seeks relief under this particular claim, it may amend the Complaint pursuant to Federal Rule of Civil Procedure 15.

jurisdiction. 2 8 U.S.C. § 1367(c)(3); *Growth Horizons, Inc. v. Delaware Cty., Pa.*, 983 F.2d 1277, 1284–1285 (3d Cir. 1993).  In exercising its discretion, "the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'" *Growth Horizons, Inc.*, 983 F.2d at 1284 (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).  Where the federal claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims.  *United Mine Workers*, 383 U.S. at 726; *Growth Horizons, Inc.*, 983 F.2d at 1284–1285.  While the Court dismisses the federal claims against Touhey, Plaintiff's federal claims against Mergel remain.  Accordingly, the Court retains original jurisdiction over this matter based on federal question jurisdiction under 28 U.S.C. § 1331.  Because Plaintiff's claims against Touhey and Mergel are part of the same controversy, the Court will continue to exercise supplemental jurisdiction over Plaintiff's state law claims against Touhey.

## V.    CONCLUSION

For the foregoing reasons, Touhey's Motion is **GRANTED**.  Plaintiff's claims against Touhey under the CFAA and DMCA are **DISMISSED WITHOUT PREJUDICE**.  Plaintiff is given leave to file an amended complaint consistent with this Opinion within 30 days of the date of the Order accompanying this Opinion.


DATED:  August 10, 2020                           /s/  Freda L. Wolfson
                                                  Freda L. Wolfson
                                                  Chief U.S. District Judge