**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

FMHUB, LLC d/b/a MuniHub,

                    Plaintiff,

v.

MUNIPLATFORM, LLC, KEVIN TOUHEY, and
JILL MERGEL,

                    Defendants.

Civil Action No. 19-15595 (FLW)

**OPINION**

**WOLFSON, Chief Judge:**

Having been granted leave, Plaintiff FMHUB, LLC d/b/a MuniHub ("Plaintiff" or "MiniHub") amended its Complaint against Defendants Kevin Touhey ("Touhey"),[1] Jill Mergel ("Mergel"), and MuniPlatform, LLC ("MuniPlatform") (collectively, "Defendants"), asserting claims pursuant to the Computer Fraud and Abuse Act ("CFAA"), 8 U.S.C. § 1030, the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201(a)(1)(A), the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, and various state law claims. In a prior opinion, dated August 10, 2020 ("Prior Opinion"), I granted Touhey's motion to dismiss Plaintiff's claims under the CFAA and DMCA.

Presently before the Court are three separate motions filed by Touhey. First, Touhey, again, moves to dismiss Plaintiff's CFAA and DMCA claims against him, as well as Plaintiff's state law claims of breach of contract, tortious interference with contract, tortious interference with prospective economic or contractual relationship, and conversion. In addition, Touhey moves to

---

[1]     Touhey is proceeding *pro se*.

strike portions of the Amended Complaint pursuant to Fed. R. Civ. P. 12(f), and for sanctions against Plaintiff and Plaintiff's counsel for violation of the American Bar Association's Rule 3.3 regarding candor towards a tribunal.  For the reasons set forth below, Touhey's motion to dismiss is **GRANTED** in part and **DENIED** in part.  Touhey's motion to dismiss is granted in part and denied in part as to Plaintiff's CFAA claim (Count IX).  Specifically, Plaintiff's CFAA claim is limited only to Touhey's alleged unauthorized access of the back-end, development infrastructure of Plaintiff's website.  Touhey's motion to dismiss is also granted with respect to Plaintiff's claims for violation of the DMCA (Count X), tortious interference with contract (Count V), tortious interference with prospective economic or contractual relationship (Count VI), and conversion (Count VII).  Touhey's motion to strike the pleadings and motion for sanctions are **DENIED**.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

For the purposes of these motions, the Court takes as true all allegations of the Amended Complaint.  The facts and procedural history of this case were set forth in detail in the Prior Opinion, and, largely unchanged, the crux of the Amended Complaint's factual allegations, focuses on Touhey's and Mergel's creation of MuniPlatform, a business providing analytic reporting and digital marketing products for municipalities and investors, and the alleged wrongful sharing, provision, dissemination, and duplication of Plaintiff's confidential and proprietary intellectual property.  Thus, I will not recount them in detail; rather, I briefly summarize the most salient facts and incorporate new allegations and relevant procedural history.

As a brief background, on November 12, 2017, Plaintiff and Touhey executed a consulting agreement ("Consulting Agreement"), dated November 15, 2017.  (Amended Compl., at ¶ 43; *see also* Amended Compl., Ex. B.)  The Consulting Agreement outlined Touhey's duties as "Senior Consultant-Business Development" and "Chief Sales Officer."  (*Id.* at 50.)  Further, the Consulting Agreement includes clauses governing the ownership of intellectual property, confidentiality, as

2

well as a non-compete clause.  (*Id.* at ¶¶ 52-54.)  It also states that Touhey covenanted and warranted that he would perform the Consulting Agreement "in accordance with its terms without violating the rights of others or any applicable law and that he has not and shall not become a party to any agreement of any kind which conflicts with" the Consulting Agreement.  (*Id.* at ¶ 55.)  On or about October 18, 2018, while Touhey was still performing his duties as Consultant/Chief Sales Officer, he allegedly purchased the domain name "MuniPlatform.com" and began to replicate MuniHub's business model and solutions.  (*Id.* at ¶ 63.)  Around the same time, Touhey allegedly began initiating contact with Plaintiff's clients, who were unknown to him prior to the execution of the Consulting Agreement, and represented to these clients, in early 2018, he would be able to present them with a lower-priced option than that provided by Plaintiff.  (*Id.* ¶ 64.) On November 8, 2018, Plaintiff's President emailed Touhey and requested a response by November 16, 2018, regarding the status of Touhey's consulting responsibilities, which Touhey had apparently not been fulfilling.  (*Id.* ¶ 65.)  Thereafter, on November 16, 2018, Touhey resigned.  (*Id.*)  Plaintiff fully compensated Touhey through December 31, 2018, per the terms of the Consulting Agreement.  (*Id.*)  On December 4, 2018, Touhey allegedly filed Articles of Organization in South Carolina for a limited liability company, MuniPlatform, LLC.  (*Id.* at ¶ 66.)

Plaintiff filed its original complaint on July 19, 2019, seeking monetary, injunctive and other relief against Touhey for: (i) breach of contract; (ii) violation of the New Jersey Trade Secrets Act, N.J.S.A. 56:15-1, *et seq.*; (iii) unfair competition in violation of N.J.S.A. 54: 4-1; (iv) tortious interference with contract; (v) tortious interference with prospective economic or contractual relationship; (vi) conversion; (vii) unjust enrichment; (viii) violation of the CFAA, 18 U.S.C. § 1030; (ix) violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*; and (x) violation of the DMCA, 17 U.S.C. § 1201(a)(1)(A).

On March 30, 2020, Touhey filed a motion to dismiss Plaintiff's claims under the CFAA and the DMCA pursuant to Fed. R. Civ. P. 12(b)(6), and the Court granted that motion on August 10, 2020. (*See* ECF Nos. 53 and 54.)  In the Prior Opinion, I found dismissal of Plaintiff's CFAA claim appropriate, because Plaintiff did not clearly identify how Touhey either exceeded his authorized access to Plaintiff's computers, or otherwise accessed Plaintiff's computers without authorization. (Prior Opinion at 11.)  Relying on my prior ruling in *Christie v. Nat'l Institute for Newman Studies*, 2019 WL 1916204, at *5 (D.N.J. 2019), I explained that an employee who is authorized to access the computer in question by the terms of his or her employment "is 'authorized' to use that computer for purposes of the CFAA even if the purpose in doing so is to misuse or misappropriate the information."  In his original complaint, Plaintiff failed to provide "any details as to the basis of its CFAA claim in its briefing, and simply state[d] that '[t]here can be no doubt that Touhey is cognizant of precisely the nature of Plaintiff's CFAA claims.'"  (*Id.*)  As for the DMCA claim, I found dismissal appropriate because the original complaint failed to include any allegations identifying "copyrighted works." (*Id.* at 13-14.)  Indeed, the Prior Opinion noted that Plaintiff's original pleading contained only two mentions of "copyrighted works," neither of which were sufficient to adequately plead a cause of action under the DMCA. (*Id.*)

On September 9, 2020, Plaintiff filed the operative Amended Complaint, which included additional allegations to support its CFAA and DMCA claims. (*See* ECF No. 57 ("Amended Compl.".)  Specifically, in connection with Plaintiff's CFAA claim, the Amended Complaint alleges that at no time was Touhey authorized to copy, transfer, or otherwise duplicate any of Plaintiff's confidential information. (*Id.* at ¶ 57.)  Specifically, according to Plaintiff, Touhey was not authorized to access the back-end or development infrastructure of Plaintiff's website, nor was he authorized to forward emails and store or transport data containing Plaintiff's confidential and

proprietary information, including web design and layout, customer lists and client information, pricing information, deal procedures, business models, marketing or distribution methods, and trademarks.  (*Id.* at ¶¶ 58-60.)  However, Plaintiff alleges that in 2018, Touhey breached his duty of loyalty to Plaintiff by accessing, downloading, storing, engineering, copying, duplicating, and forwarding to himself Plaintiff's business model, website, calendar, deal procedures, offerings, and pricing for use in his own business.  (*Id.* at ¶¶ 57-61.)  In addition, Plaintiff claims that Touhey breached his duty of loyalty to Plaintiff by duplicating Plaintiff's signature offering and MuniCard Trademark, by purchasing the domain name MuniPlatform.com to directly compete with Plaintiff while still bound by the terms of the parties' Consulting Agreement.  (*Id.* at ¶ 61-64.)  According to Plaintiff, Touhey's conduct "exceed[ed] the purposes" for which he was permitted access to Plaintiff's computers, computerized information, or confidential information.  As for Plaintiff's DMCA claim, the Amended Complaint alleges that the "unique and original digital content developed by Plaintiff Munihub on and for its website […], including the text, images, formatting, use and function" constitute copyrighted works.  (*Id.* at ¶ 154.)

In response to the Amended Complaint, Touhey filed the instant motion to dismiss, motion to strike the pleadings, and motion for sanctions on September 18, 2020.  (See ECF Nos. 60, 61, 62.)

## II.   **LEGAL STANDARD**

### A.    **Fed. R. Civ. P. 12(b)(6)**

Courts undertake a three-part analysis when considering a motion to dismiss pursuant to Fed. R. Civ. P.  12(b)(6).  *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)) (alteration in original).  Second, the court must accept as true all

of the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quotation omitted). In doing so, the court is free to ignore legal conclusions or factually unsupported accusations that merely state, "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[M]ere restatements of the elements of [a] claim[ ] ... are not entitled to the assumption of truth." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) (alterations in original) (quotation omitted). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted).

"Rule 12 prohibits the court from considering matters outside the pleadings in ruling on a motion to dismiss for failure to state a claim ... and a court's consideration of matters outside the pleadings converts the motion to a motion for summary judgment." *Kimbugwe v. United States*, No. 12-7940, 2014 WL 6667959, at *3 (D.N.J. Nov. 24, 2014). "[A]n exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis omitted) (internal quotation marks omitted). Notwithstanding these principles, courts may not consider allegations raised for the first time in a plaintiff's opposition to a motion to dismiss. *See Pennsylvania ex rel Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

### B.      Fed. R. Civ. P. 12(f)

Under Fed. R. Civ. P. 12(f), courts are permitted to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." S*ee Geruschat v. Ernst Young LLP*, 505 F.3d 237, 248 n.9 (3d Cir. 2007).  "The purpose of a motion to strike is to simplify the pleadings and save time and expense by excising from a plaintiff's complaint any redundant, immaterial, impertinent, or scandalous matter which will not have any possible bearing on the outcome of the litigation." *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 609 (D.N.J. 2002).  Generally, "motions to strike under Rule 12(f) are highly disfavored." *FTC v. Hope Now Modifications, LLC*, No. 09-1204, 2011 U.S. Dist. LEXIS 24657, at *4, 2011 WL 883202 (D.N.J. Mar. 10, 2011); *see Garlanger*, 223 F. Supp. 2d at 609; *see also GI Sportz, Inc. v. Valken, Inc.*, No. 16-7170, 2017 U.S. Dist. LEXIS 91991, at *4, 2017 WL 2600457 (D.N.J. June 15, 2017).  In addition, "[t]he district court's decision whether to grant a motion to strike under Rule 12(f) is discretionary." *Hope Now Modifications*, 2011 U.S. Dist. LEXIS 24657, at *5, 2011 WL 883202.

Courts have explained that motions to strike the pleadings "will generally be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues." *Garlanger*, 223 F. Supp. 2d at 609 (internal quotation marks and citation omitted).  Indeed, "even where the challenged material is redundant, immaterial, impertinent, or scandalous, a motion to strike should not be granted unless the presence of the surplusage will prejudice the adverse party." *Hope Now Modifications*, 2011 U.S. Dist. LEXIS 24657, at *4-5, 2011 WL 883202 (internal quotation marks and citation omitted).  In other words, "[t]he successful motion to strike is granted to 'save time and expense' by clearing away pleadings 'which will not have any possible bearing on the outcome of the litigation.'" *Id.* at *4 (quoting *Garlanger*, 223 F. Supp. 2d at 609).

III.   **DISCUSSION**

   A.   **Motion to Dismiss**

      i.   *CFAA Claim*

Touhey moves to dismiss Plaintiff's amended CFAA claim, arguing that any mention of a duty of loyalty between Touhey and Plaintiff must be stricken from the pleading.  Specifically, Touhey argues that as an independent consultant, he did not owe Plaintiff such a duty.  (Touhey Motion to Dismiss Moving Br., at 6-7.)  Touhey also argues that Plaintiff has not alleged a cognizable "loss," as required to state a CFAA claim.  (*Id.* at 8-9.) Plaintiff, however, maintains that not only are motions to strike generally disfavored, but they should also not be used to determine disputed questions of law such as what legal duties Touhey owes to MuniHub or whether he breached or otherwise violated those duties.  (Pl. Opp. Br., at 10.)

"Although initially intended as a criminal statute that penalized computer hacking activities, the CFAA explicitly authorizes civil actions under certain circumstances." *PNC Mortg. v. Superior Mortg. Corp.*, No. 09-5084, 2012 WL 627995, at *3 (E.D. Pa. Feb. 27, 2012). Specifically, relevant here, a plaintiff may have a civil cause of action against a defendant who "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer." 18 U.S.C. § 1030(a)(2)(C).  "To maintain a civil action for a CFAA violation, a plaintiff must allege conduct involving one of five enumerated factors." *Chubb INA Holdings Inc., v. Chang*, No. 16-2354, 2017 WL 499682, at *6 (D.N.J. Feb. 7, 2017) (citing 18 U.S.C. § 1030(g).  From the Amended Complaint, it appears that Plaintiff alleges a violation of the first enumerated factor: that Touhey's alleged unauthorized access to Plaintiff's computer caused "a loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." 18 U.S.C. § 1030(c)(4)(A)(i)(I).

Here, the Court must first determine whether Plaintiff has sufficiently alleged that Touhey accessed a computer without authorization or in excess of his authorized access.  As explained in the Prior Opinion, some dispute exists over the meaning of these terms and, consequently, a circuit split has emerged as to the type of conduct required to state a civil claim under the CFAA.  To that end, the Seventh Circuit has held that an employee exceeds his authorized access when he accesses files after breaching the duty of loyalty to his employer.  *Int'l Airport Ctrs., LLC v. Citrin*, 440 F.3d 418, 420–21 (7th Cir. 2006).  Similarly, the First, Fifth and Eleventh Circuits have held that the boundaries of "authorized access may include exceeding the purposes for which access is 'authorized.'" *United States v. John*, 597 F.3d 263, 272 (5th Cir. 2010); *United States v. Rodriguez*, 628 F.3d 1258, 1263 (11th Cir. 2010); *EF Cultural Travel BV v. Explorica, Inc.*, 274 F.3d 577, 581-84 (1st Cir. 2001).  Conversely, the Second, Fourth and Ninth Circuits have held that an employee entitled to obtain the documents at issue does not exceed authorized access, even where he accesses the information for an improper purpose.  *United States v. Valle*, 807 F.3d 508, 527-28 (2d Cir. 2015); *WEC Carolina Energy Solutions LLC v. Miller*, 687 F.3d 199, 204 (4th Cir. 2012) (neither term reaches "the improper use of information validly accessed"); *LVRC Holdings, LLC v. Brekka*, 581 F.3d 1127, 1135 n.7 (9th Cir. 2009).

In the Prior Opinion, I acknowledged that the Third Circuit has not addressed this issue; however, "[d]istrict courts in this circuit 'have held, in the employer-employee context, that an employee who may access a computer by the terms of his employment is authorized to use that computer for the purposes of [the CFAA] even if his purpose in doing so is to misuse or misappropriate the employer's information." *Robinson v. New Jersey*, No. 11-6139, 2013 WL 3894129, at *4 (D.N.J. July 26, 2013) (alteration in original) (quoting *Integrated Waste Solutions, Inc. v. Goverdhanam*, No. 10-2155, 2010 WL 4910176, at *8 (E.D. Pa. Nov. 30, 2010)); *see also*

*Christie v. Nat'l Institute for Newman Studies*, No. 16-6572, 2019 WL 1916204, at *5 (D.N.J. Apr. 30, 2019) ("Importantly, an employee who accesses a computer by the terms of his or her employment is 'authorized' to use that computer for the purposes of the CFAA even if the purpose in doing so is to misuse or misappropriate the information."). In other words, "[w]hile disloyal employee conduct might have a remedy in state law, the reach of the CFAA does not extend to instances where the employee was authorized to access the information he later utilized to the possible detriment of his former employer." *Givaudan Fragrances Corp. v. Krivda*, No. 08-4409, 2013 WL 5411475, at *2 (D.N.J. Sept. 26, 2013), *aff'd,* 639 F. App'x 840, 848 (3d Cir. 2016) (quoting *Synthes, Inc. v. Emerge Med., Inc.*, No. 08-4409, 2012 WL 4205476, at *16 (E.D. Pa. Sept. 19, 2012)).

In construing the Amended Complaint, Plaintiff appears to allege that Touhey violated the CFAA based on conduct that exceeded his authorized access to a computer.  For purposes of the CFAA, a person "exceeds authorized access" by "access[ing] a computer with authorization and ... us[ing] such access to obtain or alter information in the computer that the accesser <u>is not entitled to obtain or alter</u>." 18 U.S.C. § 1030(e)(6) (emphasis added).  As this definition makes clear, an individual who is authorized to use a computer for certain purposes but goes beyond those limitations is considered by the CFAA as someone who has "exceed[ed] authorized access." *LVRC Holdings LLC*, 581 F.3d at 1133; *see Collegesource, Inc. v. Academyone, Inc.*, 597 Fed. Appx. 116, 129 (3d. Cir. 2015).

Here, the Amended Complaint alleges that Touhey exceeded his authorized access to a computer by copying, forwarding, and transferring information and data, including web design and layout, customer lists and client information, pricing information, deal procedures, business models, marketing or distribution methods, and trademarks.  (*Id.* at ¶¶ 58-60.)   Plaintiff further

10

alleges that in 2018, Touhey breached his duty of loyalty to Plaintiff by accessing, downloading, storing, engineering, copying, duplicating, and forwarding to himself Plaintiff's business model, website, calendar, deal procedures, offerings, and pricing for use in his own business. (*Id.* at ¶ 61.) However, Plaintiff fails to allege that Touhey was not entitled to this information and data in his role as consultant and Chief Sales Officer.  Thus, Plaintiff does not allege that Touhey exceeded his authorization by accessing information in a computer <u>that he was not otherwise entitled to</u>.  18 U.S.C. § 1030(e)(6).  Rather, the Amended Complaint alleges only that Touhey exceeded his authorized access by copying, forwarding, storing, and transferring the data.  Although this conduct may be a basis for a cause of action under state misappropriation laws, it is not cognizable under the CFAA.  That said, to the extent that the Amended Complaint alleges Touhey accessed the "back-end or development infrastructure of Plaintiff's website" without authorization, that conduct does support a claim under the CFAA.  (Amended Compl., at ¶¶ 60, 139.)  Indeed, Plaintiff alleges that Touhey was never permitted to access the back-end, development infrastructure of Plaintiff's website; however, according to Plaintiff, Touhey accessed these components from 2017 to present, and used the information for personal benefit and the formation of MuniPlatform.  (*Id.*) Accordingly, Plaintiff's claim in Count IX is limited only to Touhey's alleged unauthorized access of the back-end, development infrastructure of Plaintiff's website.

     *ii.   DMCA Claim*

     Touhey next contends that the Amended Complaint does not state a claim against him under the DMCA because (1) Plaintiff fails to allege the existence of any copyrighted work that was accessed by Touhey; and (2) the Amended Complaint lacks any allegations regarding the registration of these supposed copyrighted works.  Plaintiff, on the other hand, contends that based on the facts alleged in its Amended Complaint, it has plausibly stated a claim against Touhey for

violation of the DMCA.  (Pl. Opp. Br., at 14-16.)  Specifically, Plaintiff maintains that any argument with respect to "registration" is irrelevant because the DMCA has no such requirement and Touhey has offered no legal support for this conclusion.  (*Id.* at 14.)

The DMCA was "[e]nacted to address the problem of online copyright infringement" and, essentially, "makes it a violation of copyright law for a person to engage in activity commonly referred to as hacking when the object of that activity is to access copyrighted material that is protected by technological measures." *In re Maxim Integrated Prods., Inc.*, No. 12-244, 2013 WL 12141373, at *16 (W.D. Pa. Mar. 19, 2013).  As found in the Prior Opinion, Plaintiff alleges that Touhey's actions constitute direct circumvention of a technological measure that effectively controls access to a copyrighted work in violation of 17 U.S.C. § 1201(a)(1)(A).  (*See* Amended Compl., at ¶ 156.)  Under the DMCA's "anti-circumvention" provision, "[n]o person shall circumvent a technological measure that effectively controls access to a work protected under" the DMCA.  17 U.S.C. § 1201(a)(1).  To state a claim under this section, a plaintiff must allege (1) that the work was protected under the Copyright Act; (2) that the copyrighted work was protected by "a technological measure that effectively controls access;" and, (3) that the measure was "circumvented" in order to obtain access.  *Id.* § 1201(a)(1)(A).  Thus, a plaintiff must meet an "initial burden [of] plead[ing] factual allegations that the information allegedly obtained was protected by copyright." *See In re Maxim Integrated Prods., Inc.*, 2013 WL 12141373, at *16; *see also Granter v. Dethlefs*, No. 10-6941, 2014 WL 2475979, at *7 (E.D. Pa. June 2, 2014) (dismissing DMCA claim where the complaint did not contain sufficient facts "to show copyright ownership").

As recounted above, the Prior Opinion found the original complaint deficient in its failure to identify the copyrighted works giving rise to Plaintiff's DMCA claim.  (Prior Opinion at 13-

14.)  The Amended Complaint corrects that deficiency.  Indeed, Plaintiff alleges that the "unique and original digital content developed by Plaintiff Munihub on and for its website […], including the text, images, formatting, use and function" constitute copyrighted works under the Copyright Act.  However, the Amended Complaint remains deficient in other areas.  Namely, the Amended Complaint fails to allege that the copyrighted works are protected by technological measures and that Touhey somehow circumvented those measures to obtain access to the copyrighted works.  Rather, the Amended Complaint only generally alleges that Plaintiff has taken "substantial steps and security measures to protect the confidentiality of its Confidential Information."  The cloesest that Plaintiff comes to adequately alleging technological measures is its claim that "Plaintiff protects access to its Confidential Information through computer passwords."  Notwithstanding this allegation, however, Plaintiff fails to allege that the confidential information protected by passwords was the same copyrighted works that Touhey allegedly accessed in violation of the DMCA.  In addition, the Amended Complaint is devoid of any allegations that Touhey actually took steps to "circumvent" the technological measures in place to protect the copyrighted works, *i.e.*, that Touhey breached, evaded, or somehow bypassed Plaintiff's password protections to access the copyrighted works.  Without these two critical elements, Plaintiff's cannot adequately plead a claim under the DMCA.  Accordingly, Count X is dismissed as to Touhey.

      *iii.*     *Breach of Contract Claim*[2]

Touhey next argues that Plaintiff's breach of contract claim should be dismissed because, pursuant to Section 7 of the Consulting Agreement, Touhey's relationship with Plaintiff terminated on June 4, 2018. (Touhey Motion to Dismiss Moving Br., at 12-13.) According to Touhey, although the Consulting Agreement provided for renewal of its terms, Plaintiff does not demonstrate the existence of any written extension or renewal of the Consulting Agreement, as required by the Agreement's express terms. (*Id.* at 13-14.) Touhey further argues that any terms that would survive the Consulting Agreement's termination, like the restrictive covenant contained in Section 5, would commence on June 4, 2018. (*Id.* at 15-16.) As such, because the restrictive covenant expired in six months, the restrictions expired on December 4, 2018—the date when Plaintiff alleges that Touhey violated the Consulting Agreement by filing Articles of Organization for MuniPlatform. (*Id.*)

"To prevail on a breach of contract claim, a party must prove a valid contract between the parties, the opposing party's failure to perform a defined obligation under the contract, and the breach caused the claimant to sustain[ ] damages." *EnviroFinance Grp., LLC v. Envtl. Barrier Co.*, 440 N.J. Super. 325, 345 (App. Div. 2015)

Here, Plaintiff alleges that Touhey and Plaintiff executed the Consulting Agreement, a valid and enforceable contract, on November 12, 2017, wherein Touhey was responsible for, among other duties: "call[ing] on new prospects and develop[ing] new business for MuniHub using

---

[2]     Notably, Touhey should have moved to dismiss Plaintiff's claims against him for breach of contract, tortious interference with a prospective economic or contractual relationship, tortious interference with an existing contract, and conversion in his previously filed motion to dismiss because these claims were alleged in Plaintiff's original complaint and the allegations underlying these claims are unchanged. However, given that courts strive to decide cases on their substantive merits, the Court will consider Touhey's belated arguments to dismiss these remaining state law claims.

MuniHub leads and Salesforce.com; account management for existing MuniHub clients; tracking of all business activity using Salesforce.com; coordinat[ing] deals with MuniHub 'Transaction Services' group; [c]onduct[ing] and participat[ing] in presentations for MuniHub prospects and represent[ing] MuniHub and industry sponsored conferences; and participat[ing] in quarterly business reviews with MuniHub executive committee." (Amended Compl., at ¶¶ 43, 50.)  Plaintiff further alleges that Touhey breached paragraphs 4, 5, and 6 of the Consulting Agreement by (1) "infringing on the ownership rights in data, materials, and systems utilized and provided by Plaintiff;" (2) "infringing upon the intellectual property rights and business relationships in and related to software, documentation, drawings, data, information, database, product, prospects, and/or clients of Plaintiff;" (3) "working on assignments and/or projects similar to the services Touhey provided for Plaintiff" with competitors of Plaintiff; and (4) "discussing, divulging, and not keeping confidential information pertaining to Plaintiff's business model, company ownership and all pertinent data including email lists, contacts, or other Confidential Information which may be of value to a competitor." (Amended Compl., at ¶¶ 79-81.)  Plaintiff alleges that as a result of Touhey's breach of the Consulting Agreement, its existing and future client relationships, as well as its confidential information, were compromised, and therefore, it was damaged.  (*Id.* at ¶¶ 83-84.)

The Court is unpersuaded by Touhey's argument that Plaintiff's breach of contract claim lacks merit because Touhey's relationship with Plaintiff terminated on June 4, 2018, and any provisions of the Consulting Agreement that survived termination expired on December 4, 2018. First, although the Amended Complaint fails to allege renewal or extension of the Consulting Agreement beyond June 4, 2018, Plaintiff alleges that Touhey breached the Consulting Agreement as early as April 26, 2018.  Specifically, Plaintiff alleges that Touhey "received from Plaintiff's

client Baker Tilly Virchow Krause ("Baker Tilly") a W-9, which Touhey signed and dated April 26, 2018 on behalf of Muniplatform." (*Id.* at ¶ 62.) Indeed, Plaintiff alleges that at this time, Touhey was still a paid contracted consultant for Plaintiff, and that paragraph 5 of the Consulting Agreement prohibited any work for Baker Tilly.  To the extent that Touhey claims in his motion to strike, *infra*, that this allegation must be disregarded because he misdated the W-9, and in actuality the W-9 should be dated April 26, 2019, that argument raises a factual dispute, which is inappropriate for consideration on a motion to dismiss.  Accordingly, Touhey's motion to dismiss Plaintiff's breach of contract claim is denied.

iv.   *Tortious Interference with Prospective Economic or Contractual Relationship Claim*

Next, Touhey contends that Plaintiff's claim for tortious interference with a prospective economic or contractual relationship should be dismissed because the Amended Complaint does not contain any allegations of malice.  (Touhey Motion to Dismiss Moving Br., at 20-22.) Specifically, Touhey argues that the Amended Complaint merely contains allegations that Touhey "competes in the same industry" as Plaintiff, which according to Plaintiff is insufficient to sustain either claim.  (*Id.* at 21.)

An action for tortious interference with a prospective business relation protects the right 'to pursue one's business, calling or occupation free from undue influence or molestation." *Printing Mart–Morristown v. Sharp Elecs. Corp.*, 563 A.2d 31 (N.J. 1989).  "To prevail on a claim for tortious interference, a plaintiff must plead "'[1] that it had a reasonable expectation of an economic advantage, [2] which was lost as a direct result of [defendants'] malicious interference, and [3] that it suffered losses thereby.'" *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 382 (3d Cir. 2016) (quoting *Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.*, A.2d 904, 932 (N.J. App. Div. 1995)).

16

Here, Plaintiff has failed to state a claim.  Indeed, Plaintiff has not alleged which business opportunities, or customers were lost as a result of Touhey's alleged interference. Rather, the Amended Complaint asserts in a conclusory fashion that "Plaintiff has maintained valid business relationships with many customers," that it has a "reasonable expectation that these relationships will continue and will not be disrupted by Touhey," that Touhey "knew of Plaintiff's relationships and expectations, but intentionally, wrongfully and unjustifiably interfered with those relationships" by attempting to "induce customers to refrain from doing business with Plaintiff." (Amended Compl., at ¶¶ 125-29.)  This is insufficient to allege a claim for prospective economic advantage.  *See Am. Millennium Ins. Co. v. First Keystone Risk Retention Grp., Inc.*, 332 F. App'x. 787, 790 (3d Cir. 2009) (affirming district court's dismissal of plaintiff's tortious interference claim where the "complaint fail[ed] to identify a single, specific customer that [plaintiff] either lost or could have acquired but for [defendants'] conduct"); *Bambi Baby.com Corp. v. Madonna Ventures, Inc.*, No. 18-12669 2019 WL 2337447, at *10 (D.N.J. June 3, 2019) (dismissing plaintiff's tortious interference claims because "Plaintiff does not identify any 'specific' customers that Defendants poached"); *Canfield Sci., Inc. v. Melanoscan, LLC*, No. 16-4636, 2017 WL 2304644, at *5 (D.N.J. May 25, 2017) (dismissing plaintiff's tortious interference claim where complaint pled that prospective customer, MSK, had placed a purchase order but did not "plead that MSK did not go through with this order, or that MSK (or any other customer) have since refused to do business with [plaintiff].").  Plaintiff must allege, for example, that as a result of Touhey's alleged tortious acts, *i.e.*, the active and persistent soliciting of clients while a consultant of MuniHub, specific and identifiable prospective or current customers have refrained from doing business with Plaintiff.  Accordingly, Touhey's motion to dismiss Plaintiff's claim for tortious interference with a prospective economic or contractual relationship is granted.

v.    *Tortious Interference with Contract Claim*

Count V of the Amended Complaint asserts a claim of tortious interference with an existing contract.  To assert such a claim, a plaintiff must plead the same elements as a claim for tortious interference with a prospective economic relationship, plus the additional element of a contract. *Hong Kong Ibesttouch Tech. Co. v. iDistribute LLC*, No. 17-2441, 2018 WL 2427128, at *3–4 (D.N.J. May 30, 2018); *Med Alert Ambulance, Inc. v. Atlantic Health System, Inc.*, No. 04-1615, 2007 WL 2297335, at *14–15 (D.N.J. Aug. 6, 2007); See *Graco, Inc. v. PMC Global, Inc.*, No. 08-1304, 2009 WL 904010 at *20-21 (D.N.J. Mar. 31, 2009).

In an attempt to plead the existence of a contract, Plaintiff claims only that "during the time Touhey was a Consultant/Chief Sales Officer with Plaintiff MuniHub, said Plaintiff had existing contractual relationships with various municipal advisor clients."  (Amended Compl., at ¶ 119.) With the exception of Baker Tilly, Plaintiff does not identify any of these municipal advisor clients, nor does it provide any further information about its relationship with them, let alone information sufficient to allege the existence of contracts between them.  Indeed, with respect to Baker Tilly, Plaintiff allegations are limited to one paragraph, which claims that in April 2018, Touhey received from Baker Tilly a W-9, which he signed on behalf of MuniPlatform.  Thus, Plaintiff's threadbare allegations with respect to this claim do not even allege a contract between Plaintiff and Baker Tilly—the only identified municipal advisor client in the Amended Complaint.  For these reasons, this claim is dismissed.

vi.   *Conversion Claim*

Under New Jersey law, "[c]onversion is essentially the wrongful exercise of dominion and control over the property of another in a manner inconsistent with the other person's rights in that property." *Peloro v. United States*, 488 F.3d 163, 173-74 (3d Cir. 2007) (quoting *McAdam v. Dean*

*Witter Reynolds, Inc.*, 896 F.2d 750, 771 (3d Cir. 1990) (citation omitted).  To state a claim for conversion, a plaintiff must show: (1) wrongful exercise of dominion or control over the property of another; (2) the taking of the property without authorization; and (3) that the taking was to the exclusion of the owner's rights to that property.  *Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 753 (D.N.J. 2013) (citing *78th Infantry Div., World War II Living History Ass'n v. Oprendek*, No. 11-165, 2011 WL 13137347, at *2-3, 2011 U.S. Dist. 140014, at *15-16 (D.N.J. Aug. 4, 2011)).  Importantly, conversion only applies to tangible personal property.  *Gameco, Inc. v. Gedicke*, 299 N.J. Super. 203, 217 (App. Div. 1997).

Based on this framework, Plaintiff's claim for conversion fails as a matter of law.  Plaintiff has not specified any tangible property over which Touhey exercised wrongful control.  While Plaintiff alleges that Touhey is in possession of its computerized business model, solutions, website design, calendar, customer lists, and pricing information and deal procedures, these are not considered tangible objects for the purposes of conversion.  *See*, *e.g.*, *Gameco*, 299 N.J. Super. at 217 (holding that confidential business information is not tangible property and therefore cannot satisfy a claim for conversion); *K–Tronik N.A., Inc. v. Vossloh–Schwabe Matsushita*, No. 06–0729, 2006 U.S. Dist. LEXIS 28265, at *3, 2006 WL 1281291 (D.N.J. May 10, 2006) (holding that customer lists, market information on customer purchases and sale prices, and customer service procedures do not constitute tangible property for the purposes of a conversion claim); *Slim CD, Inc. v. Heartland Payment Systems, Inc.*, No. 06–2256, 2007 WL 2459349, at *12 (D.N.J. Aug.24, 2007) (finding that customer transaction data transmitted via computer is intangible property and not properly the subject of a conversion claim). Accordingly, Plaintiff's conversion claim fails, and the Court dismisses Count VII as to Touhey.

**B.      Motion to Strike the Pleadings and Motion for Sanctions**

Based on the Court's findings with respect to Touhey's motion to dismiss, the Court denies Touhey's motion to strike the pleadings and motion for sanctions.  In his motion to strike the pleadings, Touhey argues that Exhibits D and E should be removed from the Amended Complaint because those exhibits constitute inaccurate, "false representations."  Specifically, with respect to Exhibit D, the form W-9 purportedly signed by Touhey on April 26, 2018, on behalf of MuniPlatform, Touhey submits that this exhibit must be stricken because it is an attempt to "falsify[] evidence."  According to Touhey, Plaintiff's own allegations that Touhey filed Articles of Organization in the state of South Carolina on behalf of MuniPlatform on December 4, 2018, demonstrates that Touhey mistakenly dated the W-9.  Similarly, Touhey maintains that Exhibit E, an email from Touhey to Tim Sutton of Baker Tilly that contains a MuniCard from Plaintiff's website, must be stricken because it is deceiving in its use to imply that Touhey had unauthorized access to the back-end of Plaintiff's website.  Like Touhey's request to strike the phrase "duty of loyalty" from the Amended Complaint, however, the Court will not strike Exhibits D and E.  These exhibits are not redundant, immaterial, or scandalous.  More importantly, the motion to dismiss stage is not the appropriate time for Touhey to challenge the validity, authenticity, and factual implication of these documents.  Touhey's motion to strike is denied.

Because Touhey's motion for sanctions is premised solely on Plaintiff's decision to attach Exhibits D and E to the Amended Complaint, Touhey's motion for sanctions is likewise denied.

**IV.    <u>CONCLUSION</u>**

For the reasons set forth above, Touhey's motion to dismiss is **GRANTED** in part and **DENIED** in part.  Touhey's motion to dismiss is granted in part and denied in part as to Plaintiff's CFAA claim (Count IX).  Specifically, Plaintiff's CFAA claim is limited only to Touhey's alleged

unauthorized access of the back-end, development infrastructure of Plaintiff's website.  Touhey's motion to dismiss is also granted with respect to Plaintiff's claims for violation of the DMCA (Count X), tortious interference with contract (Count V), tortious interference with prospective economic or contractual relationship (Count VI), and conversion (Count VII).  Touhey's motion to strike the pleadings and motion for sanctions are **DENIED**.

Dated: April 15, 2021                                          /s/ Freda L. Wolfson
                                                                      Freda L. Wolfson
                                                                      U.S. Chief District Judge